**NATIONAL LIFE & ACCIDENT INS. CO., Inc., v. ELLIS et al.**

**No. 11468.**

Court of Civil Appeals of Texas.
San Antonio.

Jan. 3, 1945.

Rehearing Denied Jan. 31, 1945.

G. Woodson Morris, of San Antonio, for appellant.

Harry B. Berry, of San Antonio, for appellees.

NORVELL, Justice.

Bessie Ellis, appellee, brought this action against the National Life & Accident Company, appellant, seeking a recovery upon certain life insurance policies executed by appellant upon the life of Myrtle Brown. Appellee was named as beneficiary in said policies.

Appellee relied upon Article 5541, Vernon's Ann.Civ.Stats., to establish the death of Myrtle Brown. This article reads as follows: "Any person absenting himself for seven years successively shall be presumed to be dead, unless proof be made that he was alive within that time; but an estate recovered on such presumption, if in a subsequent action or suit the person presumed to be dead shall be proved to be living, shall be restored to him with the rents and profits of the estate with legal interest during such time as he shall be deprived thereof."

We have concluded that the judgment must be reversed and the cause remanded for the reason that the jury's answer to special issue No. 4 is contrary to the undisputed evidence and its answers to the remaining issues are insufficient to support the judgment.

The jury found (1) that Myrtle Brown established a residence in San Antonio, Texas, (1a) that San Antonio was the last known residence of Myrtle Brown, and (2) that Myrtle Brown absented herself from her last known residence (3) for a period of seven years successively. Special issues Nos. 4 and 5, together with the jury's finding with reference thereto, were as follows:

"Question No. 4. Do you find from a preponderance of the evidence that Myrtle Brown was seen or heard from since she absented herself (if you have found she did so) from her last known residence? Answer 'Yes' or 'No'.

"We, the jury, answer: No.

"Question No. 5. If you have answered the above question 'No' you need not answer the following question, but if you have answered the same 'Yes' you will answer the following question: When do you find from a preponderance of the evidence that Myrtle Brown was last seen or heard from? Answer by stating the time.

"We, the jury, answer: ———"

Appellee, Bessie Ellis, testified that Myrtle Brown was her aunt and had been living and making her home with witness in San Antonio for two years prior to October of 1931. That on said date, Myrtle Brown left San Antonio "to go down the country to pick cotton," saying that she would be back by Christmas. In November of 1931, witness received a letter from Myrtle Brown who was at that time in Alleyton, Texas, and had not heard from her since receipt of said letter.

The witness, Texana Holliday, testified that Myrtle Brown was a distant cousin of hers and she (the witness) had known Myrtle Brown practically all of her life; that she had seen Myrtle Brown in Alleyton in 1932, and had received a letter from Myrtle Brown from Wharton, Texas, in 1937. The letter, according to the witness, was in Myrtle Brown's handwriting and the envelop thereof bore a Wharton postmark.

Mary Fitzgerald testified that she saw Myrtle Brown in Alleytown in 1932 and received a letter from her from Wharton in 1936.

Sarah Black testified, by deposition, that Myrtle Brown was her aunt; that she (the witness) picked cotton with Myrtle Brown in 1935 and during that year Myrtle Brown lived in Eagle Lake, Texas. When this witness testified in person at the trial she retracted part of her testimony, placing the date of her having picked cotton with Myrtle Brown in 1931 instead of 1935.

J. C. Brown testified that he was a former husband of Myrtle Brown; that he had seen Myrtle Brown at Alleytown at his mother's house in 1932; that he received a letter from Myrtle Brown in 1937, postmarked Wharton, Texas.

Aside from the testimony of other witnesses, it appears from appellee's own testimony (which is also uncontradicted) that Myrtle Brown was heard from while in Alleytown after she had left San Antonio, which was her residence according to the jury's findings.

The authorities make a clear distinction between (1) cases in which the absentee has been seen or heard from after leaving his place of residence and (2) those cases in which said absentee has not been seen or heard from after leaving his place of residence.

The judgment here was rendered upon the theory that this case was one of the second class of cases mentioned, while the undisputed testimony demonstrates that it in reality falls within the first class.

**124**

The distinction between the two classes lies in this: That proof of an absentee's being alive in some place other than his residence after he has left the same carries with it a presumption of continuance of life, which until rebutted prevents the operation of the presumption of death under the statute. The presumption of the continuance of life may be rebutted by proof of diligent inquiry as to the absentee at the place where he was last known to be alive, and of those who would likely have information of his whereabouts. Kansas City Life Insurance Co. v. Fisher, Tex.Civ.App., 82 S.W.2d 1063; 25 C.J.S., Death, § 6, p. 1059.

This burden of inquiry and investigation lies upon the one claiming under the presumption of death, even though the evidence goes no further than showing that the absentee was alive at a certain place after having left his last known residence, although such evidence be insufficient to show that the absentee established a residence at the place he was last seen or heard from. American Nat. Ins. Co. v. Garcia, Tex.Civ.App., 46 S.W.2d 1011; Id., 124 Tex. 466, 78 S.W.2d 170.

If the evidence demonstrates that the absentee has established a new residence after leaving a former one, it must be shown that the absence relied upon to establish the presumption of death was from the last known residence, and absence from a former residence will not suffice Latham v. Tombs, 32 Tex.Civ.App. 270, 73 S.W. 1060.

Evidence was introduced upon the trial which was sufficient to support findings that Myrtle Brown was alive at Alleytown in 1932, at Eagle Lake in 1935, at Wharton in 1936 and 1937. The jury was instructed to answer special issue No. 5 only in case they gave an affirmative answer to special issue No. 4. Since the undisputed evidence showed that Myrtle Brown had been heard from since she left San Antonio in 1931, special issue No. 4 should not have been submitted and special issue No. 5 should have been submitted unconditionally. Mere absence from a domicile or place of residence for seven years is insufficient to raise a presumption of death. The absentee's whereabouts must be unknown for the prescribed period and seven full years must have elapsed from the time the absentee was last shown to be alive. Gorhan v. Settegast, 44 Tex. Civ.App. 254, 98 S.W. 665.

By reason of the errors pointed out, the judgment of the trial court is reversed and the cause remanded for new trial.